**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| QUEENS WEST DEVELOPMENT CORPORATION, et. al, | Civil Action No.: 10-4876 |
| Plaintiffs, | |
| v. | **OPINION** |
| HONEYWELL INTERNATIONAL, INC., | |
| Defendant. | |

This matter comes before the Court on a motion to dismiss filed by Defendant Honeywell International, Inc. ("Defendant").  Defendant seeks to dismiss Counts Two, Three, and Four of the Complaint submitted by Plaintiffs' Queens West Development Corporation, Avalon Riverview II, LLC, and Avalon Riverview North, LLC (collectively "Plaintiffs").  Plaintiffs claim that Defendant violated the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et. seq. (CERCLA), because Defendant did not pay costs and damages incurred by Plaintiffs for the investigation and remediation of historic environmental contamination, which was caused by Defendant's legal predecessor.  Alternatively, Plaintiffs claim that they have a cause of action under common law nuisance, and legal/equitable restitution.

1

I.     **BACKGROUND**

Plaintiffs seek costs and damages in connection with past and future investigation and remediation of historic environmental contamination caused by the Warren Chemical and Manufacturing Company and its successors (Warren).  Warren and its successors owned and operated Warren Chemical Works, which was housed on a parcel of property located along the East River waterfront in Long Island City, New York.  Warren Chemical Works produced roofing and paving products including various coal tar distillates, oils, and other products, by processing and distilling coal tar and asphalt in large boilers and stills.  Decades of operations at Warren Chemical Works resulted in the release and disposal of substantial amounts of coal tar, creosate material, and related hazardous substances (hereinafter "coal tar contamination") into the soil and groundwater under the site.

The property on which Warren Chemical Works operated, now known as Parcels 8 and 9 ("the Site"), has been designated for redevelopment and is being redeveloped as part of the Queens West Development Project ("Queens West Development").   Properties in the Queen West Development have been and will be redeveloped for residential, commercial, and recreational uses.  For example, Parcel 8 will house a public library and headquarters to serve adjacent public parks, and Parcel 9 contains a high-rise residential building.

Plaintiffs have conducted investigation and remediation of the Site, as well as areas off-site, under the oversight and approval of the New York State Department of Environmental Conservation (NYSDEC), pursuant to the NYSDEC's Brownfield Cleanup Program (BCP) and Voluntary Cleanup Program (VCP).  The investigations of the Site have revealed substantial amounts of coal tar contamination in the subsurface located generally within the former footprint of Warren Chemical

2

Works. The coal tar contamination consists largely of naphthalene, which has been deemed a toxic, hazardous substance under CERCLA and has been identified by the U.S. Department of Health and Human Services as an anticipated carcinogen. The releases and disposals of coal tar contamination at the Site have caused Plaintiffs to incur necessary response costs (as defined by CERCLA and consistent with the National Contingency Plan[1]), which include but are not limited to investigation and remediation costs. Plaintiffs represent that at the time that they filed their Complaint, they had incurred approximately $16 million in investigation and remediation costs and that the total response costs are estimated to meet or exceed $20 million. Upon completion of the remedial process under the BCP and VCP, the Plaintiffs "have received or will receive a release of liability from the NYSDEC."

Defendant Honeywell International, Inc. (Honeywell) is the legal successor to Warren and its successors through a series of mergers, acquisitions, and name changes. Honeywell has admitted to the United States Environmental Protection Agency that it is the successor-in-interest to Barrett Manufacturing Company, which acquired Warren in 1899.[2]

---

[1] "'The national contingency plan specifies procedures for preparing and responding to contaminations and was promulgated by the Environmental Protection Agency . . . .'" *United States v. Atl. Research Corp.*, 551 U.S. 128, 135 n.3 (2007) (quoting *Cooper Indus. Inc. v. Aviall Servs.*, 543 U.S. 157, 161 n. 2 (2004)).

[2] The facts set forth are taken from the allegations in Plaintiffs' Complaint and are assumed to be true for the purpose of the instant motion. Honeywell contends that all of Plaintiff's causes of action are premised upon the theory that it is liable in this action as a corporate successor to the entities that may have contaminated the Site. Honeywell asserts that it never owned, conducted any operations at, or contaminated the Site. Further, Honeywell denies any and all corporate successor liability alleged in the Complaint and reserved all defenses to such allegations. Nevertheless, Honeywell maintains that resolution of the corporate successor liability issue is not required for dismissal of Plaintiffs' Second, Third, and Fourth Claims for Relief.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allow a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a 12(b)(6) motion to dismiss, the Court must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  The plausibility standard requires that the facts alleged "allow[] the court to draw the reasonable inference that the Defendant is liable for the conduct alleged" and demands "more than a sheer possibility that a Defendant has acted unlawfully." *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  While the factual allegations in a complaint must be accepted as true, such treatment is "inapplicable to legal conclusions." *Id.*  When evaluating a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of the public record, and documents that form the basis of the claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citations omitted).

## III.   DISCUSSION

### A.   Count Two: Contribution under CERCLA

The first issue is whether Plaintiffs may maintain their claim for contribution under § 113(f)(3)(B) of CERCLA.  Defendant maintains that Plaintiffs cannot sustain such a claim for three reasons.  First, Defendant argues that because Plaintiffs voluntarily cleaned up the Site, they do not

qualify as a Potentially Responsible Party; consequently, they can only recover response costs under § 107(a)(4)(B).  Second, Defendants maintain that Plaintiffs cannot seek contribution under § 113(f)(3)(B) because Plaintiffs have not made any reimbursement payment to the government as required by that CERCLA provision.  Third, Plaintiffs do not have an "administrative or judicially approved settlement" with the United States or a State as required by § 113(f)(3)(B).

In response, Plaintiffs advance that reimbursement is not the sole test for asserting a claim under § 113(f)(3)(B).  Rather, they posit that the prerequisite for asserting such a claim is whether a plaintiff has resolved its liability to the United States or a State.  Plaintiffs maintain that they have or will resolve their liability to the State of New York.  In addition, Plaintiffs argue that the applicable case law has not foreclosed the possibility of recovery under both §§ 107(a)(4)(B) and 113(f)(3)(B).

Sections 107(a)(4)(B) and 113(f)(3)(B) of CERCLA both allow private parties to recover expenses incurred in connection with the remediation of contaminated sites.  42 U.S.C. §§ 9607(a), 9613(f).  Courts have struggled to discern when and in what circumstances either or both provisions may be utilized for recovery of expenses.  *See Atl. Research Corp.*, 551 U.S. at 131-34; *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 218 (3d Cir. 2010) (collecting cases noting difficulty in determining relationship between §§ 107 and 113).  Although disputes over the intersection of these two provisions are common, the parties have not advanced and the Court's research has not uncovered a case discussing the precise issue presented to this Court – whether a party that voluntarily undertakes a cleanup action can maintain a claim for contribution under § 113(f)(3)(B), when it has simultaneously asserted a claim for cost recovery under § 107(a).  Nevertheless, the statutory text and case law on these two provisions is illuminating.

5

Section 107(a) "provides for a right to *cost recovery*" and §§ 113(f)(1) and 113(f)(3)(B) provide "*separate rights to contribution.*" *Atl. Research Corp.*, 551 U.S. at 138 (citation and quotation marks omitted).  Those provisions "provide two clearly distinct remedies" and "complement each other by providing causes of action to persons in different procedural circumstances."[3] *Id.* at 138-39, 139 n.6 (citations and internal quotations omitted).  To illustrate, "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgement or settlement are recoverable only under § 113(f)." *Id.* at 139 n.6.

Section 107 of CERCLA establishes liability in potentially responsible parties (PRPs). Subsection (a) sets forth four categories of PRPs that are liable under CERCLA for the following costs:

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
>
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
>
> (D) the costs of any health assessment or health effects study carried out under section 104(i).

Courts interpreting § 107 have explained that it "authorizes the United States, a state, or 'any other person' to seek reimbursement for all removal or remedial costs associated with the hazardous

---

[3]  The Supreme Court has also noted, however, that it "do[es] not suggest that §§ 107(a)(4)(B) and 113(f) have no overlap at all." *Id.*  at 139 n. 6.

materials on the property, provided that those actions are consistent with the National Contingency Plan . . . ." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120-21 (2d Cir. 2010) (citing § 9607(a)(4)). Indeed, the United States Supreme Court held in *Atlantic Research* that the "plain language" of § 107 "authorizes cost-recovery action by *any private party,* including PRPs." 551 U.S. at 136 (emphasis added). "Thus, a private party may recover under § 107(a) without any establishment of liability on its part to a third party, including the government." *Agere*, 602 F.3d at 218 (citing *Atl. Research Corp.*, 551 U.S. at 139).

In comparison, § 113(f)(3)(B) "provides a right of contribution to PRPs that have settled their CERCLA liability with a [S]tate or the United States through either an administrative or judicially approved settlement." *Niagara*, 596 F.3d at 121 (citing 42 U.S.C. § 9613(f)(3)(B)). That provision provides that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement . . . ." 42 U.S.C.§ 9613(f)(3)(B). In *Atlantic Research*, the Supreme Court explained that the term "contribution," as used in § 113(f), should be used in its "traditional sense," which has been defined "as 'the tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)).

Considering the plain language of § 113(f)(3)(B) and the relevant case law, the Court concludes that Plaintiffs have not stated a claim for relief under § 113(f)(3)(B). First, Plaintiffs contend that they engaged in the remediation and investigation of the Site voluntarily. Such voluntary actions on behalf of Plaintiffs does not support a claim for relief under § 113(f)(3)(B)

because the Supreme Court has counseled that "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B)." *Atl. Research Corp.*, 551 U.S. at 139 n. 6; *see also Niagara*, 596 F.3d at 122 ("Section 107 . . . is available for parties that have incurred actual response costs, while § 113(f) is available for parties that have reimbursed those response costs to others." (citing *Atl. Research Corp.*, 551 U.S. at 135-137)).

Second, Plaintiffs do not contend that they are a PRP.  Section § 113(f) is entitled "contribution," and the Supreme Court has explained that contribution is a "'tortfeasor's right to collect from others responsible for the same tort." *Id.* at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004).  In addition, the Court of Appeals for the Second Circuit has explained that § 113(f) was intended to "'clarify and confirm . . . the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the PRP believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances.'" *Niagara*, 596 F.3d at 127 (quoting H.R. Rep. No. 99-253(I), at 79 (1985)). Plaintiffs make no allegation that they are at fault for any portion of the contamination at the Site. Consequently, it would be inconsistent with the purpose of the statute to allow Plaintiffs, who do not concede any wrongdoing, to seek contribution. *See Cooper Indus.*, 543 U.S. at 166 ("There is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those circumstances.").

Finally, putting aside the issue of whether Plaintiffs have reimbursed the State, Plaintiffs do not allege that they have entered into an "administrative or judicially approved settlement." 42 U.S.C.§ 9613(f)(3)(B).  Rather, Plaintiffs allege that they  "have resolved, or will resolve, their liability to the State of New York."  In the Court's view, the express language of § 113(f)

contemplates that resolution of a plaintiff's liability be accomplished through an administrative or judicially approved settlement. Without an administrative or judicially approved settlement, Plaintiffs cannot state a claim for relief under § 113(f). Accordingly, Count Two of Plaintiff's Complaint for contribution under § 113(f) of CERCLA is dismissed.

### B.    Count Three: Private Nuisance

The next issue for this Court is whether Plaintiffs have stated a claim for private nuisance. Defendant maintains that such a claim may be barred for two reasons. First, Defendant asserts that historic contamination at the Site does not constitute an invasion as required by nuisance case law. Second, Defendant argues that the claim should be dismissed under the doctrine of *caveat emptor*, which precludes nuisance claims against predecessors in title. In opposition, Plaintiffs maintain that the essence of a nuisance claim is the invasion of one's *interest* in the private use and enjoyment of land and that Defendants have interfered with Plaintiffs' use and enjoyment of the Site by contaminating the Site. In addition, Plaintiffs argue that the Court should not bar the private nuisance claim under the facts of this case because the contamination is a latent subsurface condition and the property was acquired by condemnation, instead of through an open market real estate transaction.

Initially, the Court notes that the parties dispute whether New York or New Jersey law applies to this state law claim. Defendants maintain that New York law applies; Plaintiffs assert that New Jersey law applies. Having reviewed the applicable law in both States, the Court concludes that Plaintiffs cannot maintain a claim for private nuisance under either State's laws.

New Jersey courts have explained that a private nuisance "'consists of an interference with one's interest in the private use and enjoyment of land." *N.J. Transit. Corp. v. Am. Premier*

*Underwriters, Inc.*, No. 04-6423, 2005 U.S. Dist. LEXIS 43212, at *28-29 (D.N.J. Nov. 22, 2005)

(quoting *Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1057 (D.N.J. 1993); *Birchwood*

*Lakes Colony Club, Inc. v. Borough of Medford Lakes*, 90 N.J. 582, 591-92 (1982)).  "Private

nuisance, however, applies only to interference with use of *adjoining* land."  *Klockner*, 811 F.Supp.

at 1057 (citing *Amland Props. Corp. v. Aluminum Co. of Am.*, 711 F. Supp. 784, 808 (D.N.J. 1989)).

Stated differently, "private nuisance is confined to situations where one's property use interferes with

another's use of neighboring or adjoining property."  *Id.* (citations omitted); *see also Philadelphia*

*Elec. Co. v. Hercules*, 762 F.2d 303, 314 (3d Cir. 1985) (noting "historical role of private nuisance

law as a means of efficiently resolving conflicts between *neighboring*, contemporaneous land

uses."); *New Jersey v. Ventron*, 94 N.J. 473, 475 (1983) (noting traditional rule that nuisance

involves interference with neighboring land).  "Thus, a successor landowner is precluded from

asserting a public nuisance against a predecessor landowner."  *Id.*

    Under New York law, a plaintiff may maintain an action for private nuisance if defendant's

"'conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and

such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under

the rules governing liability for abnormally dangerous conditions or activities.'" *Chase Manhattan*

*Bank N.A. v. T & N*, 905 F. Supp. 107, 125 (S.D.N.Y. 1995) (quoting *Copart Indust. v. Consol.*

*Edison Co. of N.Y.*, 41 N.Y.2d 564, 569 (1977)).  An invasion of the interest occurs if the source of

the contamination invading plaintiff's property originates outside the property.  *Id.* at 126.  However,

similar to New Jersey law, "New York cases hold that where the source of the nuisance exists on the

plaintiff's own property the requisite invasion is absent and no action for nuisance may be

maintained." *Id.* at 125-26 (citing *Drouin v. Ridge Lumber, Inc.*, 209 A.D.2d 957, 959 (N.Y. App.

Div. 4th Dep't 1994) (nuisance claims properly dismissed to extent diesel fuel contamination arose on plaintiff's own property; reinstating, however, nuisance claims based on contamination of surrounding land); *Rose v. Grumman Aerospace Corp.*, 196 A.D.2d 861, 862 (N.Y. App. Div. 2nd Dep't 1993) ("Because the injury complained of was to the same property as that one which the nuisance was alleged to exist, the plaintiff's nuisance cause of action should have been dismissed.")).

Applying either New Jersey or New York law, the Court finds that Plaintiffs cannot state a claim for private nuisance. The latent contamination at issue in this case exists on the Site and was created on the Site decades ago; it was not transported to the Site from adjacent or adjoining property. Such facts preclude Plaintiffs from establishing the requisite invasion necessary to state a claim for private nuisance. In addition, the Court is not persuaded by Plaintiffs' argument that *Bahrle v. Exxon*, 279 N.J. Super. 5 (App. Div. 1995), *In re Nassau Cty*, 2010 WL 4400075 (N.Y. Sup. Ct. Nov. 4, 2010), or *Birchwood Lakes v. Medford Lakes*, 90 N.J. 582 (1982) stand for the principle that hazardous substances existing on one's own property can constitute a private nuisance because the activities causing the contamination in those cases occurred off-site at adjoining properties. Further, in the absence of authority permitting a nuisance claim for contamination created on-site by a prior owner, the Court declines to sustain the claim for nuisance. In light of the foregoing analysis, the Court need not address whether the claim would also be barred by the doctrine of *caveat emptor*. Count Three is dismissed.

### C.    Count Four: Restitution

The final issue before this Court is whether Plaintiffs may maintain their Fourth Claim for relief – the alternative claim for restitution. Defendant maintains that the Second Circuit has held that "CERCLA preempts the state law remedies of restitution and indemnification." *Bedford*

11

*Affiliates v. Sills*, 156 F.3d 416, 427 (2d Cir. 1998), *overruled on other grounds by Atl. Research Corp.*, 459 F.3d at 832-33.  In response, Plaintiffs argue that dismissal of their restitution claim at this early-stage of the case would be premature because this claim is an alternative claim and they have not prevailed on their § 107 claim.  The Court agrees that dismissal of this alternative cause of action is premature because Federal Rule of Civil Procedure 8(d)(2) permits alternative statements of a claim. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").  Further, the Court declines to rule at this early stage of the litigation that Plaintiffs could not prevail on a State common law restitution claim if they are unable to prevail on a § 107 claim.  Defendants may renew such a motion in the future.

**III.    CONCLUSION**

For the aforementioned reasons, Defendant's motion to dismiss is granted in-part and denied in-part.  Counts Two and Three are dismissed without prejudice and Count Four survives.  Plaintiffs are granted leave to file an amended complaint, if any, within thirty days.

_____
PETER G. SHERIDAN, U.S.D.J.

August 17, 2011

12