<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **QUEENS WEST DEVELOPMENT CORPORATION; AVALON RIVERVIEW II, LLC; AVALON RIVERVIEW NORTH, LLC, f/k/a AVALON RIVERVIEW III, LLC,** :<br><br>Plaintiffs,<br><br>v.<br><br>**HONEYWELL INTERNATIONAL, INC.,**<br><br>Defendant. | Civil Action No. 10-4876-PGS<br><br><br><br>OPINION AND ORDER |

<u>**ARPERT, U.S.M.J.**</u>

This matter comes before the Court on Plaintiffs Queens West Development Corporation, Avalon Riverview II, LLC, Avalon Riverview North, LLC, f/k/a Avalon Riverview III, LLC's (collectively, "Plaintiffs") Motion for Leave to File an Amended Complaint [dkt. no. 51], returnable October 22, 2012. Plaintiffs' proposed Amended Complaint substitutes AvalonBay Communities, Inc. ("AvalonBay") for the now dissolved Plaintiff Avalon Riverview II, LLC ("Avalon II"). The proposed Amended Complaint also includes additional factual allegations and legal assertions concerning Defendant's successor liability. Finally, the Amended Complaint includes more current allegations regarding Plaintiffs' remediation efforts and costs incurred to date. Defendant Honeywell International, Inc. ("Honeywell" or "Defendant") has opposed the Motion [dkt. no. 55]. The Court heard argument on October 22, 2012 and has carefully considered the submissions of the Parties. For the reasons set forth herein and on the record following oral argument, Plaintiffs' Motion is **GRANTED**, in part, and **DENIED**, in part.

I.      **FACTUAL AND PROCEDURAL HISTORY**

This action seeks recovery of costs incurred by Plaintiffs to investigate and remediate historic environmental contamination of a site in Long Island City, New York ("the Site"). Plaintiffs filed their Complaint on September 23, 2010. The Complaint alleges that corporate predecessors of Honeywell owned and/or operated the Warren Chemical Works, an industrial facility located on the Site. Plaintiffs' Complaint originally included four Counts:

> (1) CERCLA § 107(a) Cost Recovery;
> (2) CERCLA § 113(f)(3)(B) Contribution;
> (3) Common Law Nuisance; and
> (4) Common Law Legal and / or Equitable Restitution.

Honeywell filed a Motion to Dismiss Counts (2), (3) and (4). By Order dated August 18, 2011, U.S. District Judge Peter G. Sheridan dismissed Counts (2) and (3). Judge Sheridan denied Defendant's Motion to Dismiss Count (4) without prejudice.

In this Motion to Amend, Plaintiffs seek to add AvalonBay as a plaintiff asserting its own CERCLA cost recovery claim and its own common law restitution claim. Plaintiffs argue the addition is necessary because Avalon II was dissolved in 2005. The inclusion of Avalon II instead of AvalonBay in the original Complaint, according to Plaintiffs, was an inadvertent discrepancy.

II.     **STANDARD OF REVIEW**

FED. R. CIV. P. 15(a) governs amendments to pleadings. The Rule provides that "leave shall be freely given when justice so requires." However, leave to amend is not automatic. The Third Circuit has recognized that a request for leave to amend may be denied when the proposed amendment is futile. See Arab Africa Int'l Bank v. Epstein, 10 F. 3d 168, 175 (3d Cir. 1993) (denying leave to amend when RICO claim was time-barred); see also Garvin v. City of Philadelphia, 354 F. 3d 215, 222 (3d Cir. 2003) (affirming the District Court's denial of

plaintiff's motion to amend when plaintiff's amended complaint would not have survived a motion to dismiss in light of the statute of limitations).

An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J.1990) (citations omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). Under a Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary to survive such a motion. Antoine v. KPMG Corp., 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. Meadows v. Hudson County Bd. of Elections, 2006 WL 2482956, at *3 (D.N.J. Aug. 24, 2006). "Generally, a Court is not concerned with the question of whether the amended complaint would be barred by the Statute of Limitations unless this fact appears clearly from the record." Alfieri v. Willys Motors Inc., 35 F.R.D. 194, 95 (E.D. Pa. 1964).

Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Determination of whether a Complaint survives a motion to dismiss requires a two-part analysis. Folwer v. UMPC Shadyside, 578 F.3d 203, 210 (3d. Cir. 2009).

First, factual and legal elements of the complaint must be separated. Folwer, 578 F.3d at 210. All well-pleaded facts must be accepted as true, but legal conclusions may be disregarded. Id. at 210–11. Second, the Court must determine whether the plaintiff's complaint articulates

"enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This context-specific task requires the "reviewing court to draw on its judicial experience and common sense." Id. at 679.

The Court may consider only a very limited record when evaluating whether a proposed amended complaint is futile. When evaluating an objection based upon futility, the Court may only consider the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the claims are based on those documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1992).

## III.   CERCLA CLAIMS

Honeywell claims the proposed amendment to include AvalonBay as a plaintiff is futile because its claims are time-barred by CERCLA's 6 year statute of limitations for remedial actions.[1] In support of this position, Honeywell advances three separate dates which it contends may have triggered the statute of limitations.[2]

### A.   Statute of Limitations

Under CERLCA, in order to recover costs relating to a remedial action, the lawsuit to recover those costs must be commenced "within 6 years after initiation of physical on-site construction of the remedial action . . . ." 42 U.S.C.A. § 9613(g)(2)(B).

---

[1] Because the Complaint was filed on September 23, 2010, any action constituting "remedial action" prior to September 23, 2004 would trigger the statute of limitations and result in the claims being barred.

[2] Notably, none of the cases cited by Honeywell include a determination of the relevant triggering date in the context of a motion to dismiss.

CERCLA defines "*remedial action*," in relevant part, as follows:

> The terms "remedy" or "remedial action" mean those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such [remedial] actions protect the public health and welfare and the environment
> . . .

42 U.S.C.A. § 9601(24) (West).

Although the Third Circuit has not yet clarified the issue of remedial activity, other circuits have. The Second Circuit, in Shaefer v. Town of Victor, determined that the plaintiff's use of a crane to dig, drag and spread on-site soils and other materials qualified as initiation of on-site construction because it was part of a "long-term, permanent containment effort" intended "to prevent or minimize the release of hazardous substances." 457 F. 3d 188, 202-204 (2d Cir. 2006). The Eight Circuit, in United States v. Findett Corp., distinguished this type of remedial activity from activity that could be considered only preparatory. 220 F. 3d 842, 848 (8th Cir. 2000) (activities such as "sampling, surveying, evaluation and measuring" did not constitute initiation of physical on-site construction because these activities did not constitute "construction"). Similarly, the Sixth and Seventh Circuits have also held that for remedial action to begin, the work must be *consistent* with the permanent remedy. See Geraghty & Miller, Inc. v. Conoco, Inc., 234 F. 3d 917, 927 (5th Cir. 2000); United States v. Navistar International

5

Transportation Corp., 152 F. 3d 702, 712-13 (7th Cir. 1998). Only the Ninth Circuit has adopted a bright-line rule. In California v. Neville Chemical Co., the Ninth Circuit held that the initiation of physical on-site construction can only occur after the adoption of the final remedial action plan. 358 F. 3d 661, 667 (9th Cir. 2004).[3]

CERCLA also distinguishes between "remedial" and "removal" actions. 42 U.S.C.A. § 9613(g)(2)(A). For removal actions, litigation must be commenced within 3 years after *completion* of the removal activity. Id. CERCLA defines "*removal action*," in relevant part, as follows:

> The terms "remove" or "removal" means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for . . .

42 U.S.C.A. § 9601(23) (West).

While removal actions are "immediate or interim responses," remedial actions "generally are permanent responses." Geraghty & Miller, 234 F. 3d at 926 (further noting that cases on this issue tend to be highly fact-specific). Consistent with this understanding, "Congress intended that the term 'removal action' be given a broad interpretation." Id. Remedial actions, on the other

---

[3] Plaintiffs submitted documentation showing the final remedial work plans were not submitted to New York State Department of Environmental Conservation ("NYSDEC") for approval until May, 2005 (Parcel 9) and September, 2010 (Parcel 8). Chertok Decl., dkt. no. 51-2, ¶ 4.

hand, are generally conducted over an extended period of time, with costs in excess of 1 million dollars. See Louisiana v. Braselman Corp., 78 F. Supp. 2d 543, 548 (E.D. La. 1999).

### 1. 1985 Activities

Defendant first argues that remedial activities were initiated at the site in 1985 when monitoring and sampling wells were installed on Parcels 8 and 9. Defendant further contends "monitoring" is specifically contemplated by the statute. Def.'s Br. at 11-12 (citing Yankee Gas Services Co. v. UGI Utilitlies, Inc., 616 F. Supp. 2d 228, 273 (D. Conn. 2009) (excavators, curbing machines, front end loaders, cranes, bulldozers, vibratory rollers, and *trenches to collect tar* triggered initiation of physical on-site construction); Navistar, 152 F. 3d at 713 (7th Cir. 1998) (permanent *clay cap* called for by remedial action triggered statute of limitations)). Plaintiffs, in contrast, argue this activity was merely an investigative or preparatory measure.

The statue considers only "monitoring reasonably required to assure that [remedial] actions protect the public health and welfare and the environment." 42 U.S.C.A. § 9601(24). A plain reading of the statute suggests that it contemplates post-remedial monitoring, or monitoring necessary to evaluate on-going remedial action. It does not purport to address monitoring which is merely preparatory. However, for the purposes of the instant Motion, the Court needn't engage in a detailed statutory interpretation analysis. In the absence of clear precedent to the contrary, the Court will adopt this interpretation at least to the extent it supports Plaintiffs' plausible claim that the 1985 activities, as merely preparatory, did not trigger the applicable statute of limitations.

### 2.    2000/2001 Activities

Defendant next argues that remedial activities at the Site commenced in 2000/2001 when demolition of pre-existing buildings, removal of steel/concrete vaults, and installation of fencing occured.

Again, Plaintiffs maintain that these activities at the Site were merely preliminary. With regard to removal of the vaults and excavation, Plaintiffs advance four reasons why this activity did not trigger the applicable statute of limitations. First, the work was undertaken by Queens West Development Corporation ("QWDC") (not an Avalon entity) pursuant to a lease that provided QWDC was responsible for the removal of improvements and that Avalon would be responsible for environmental remediation. Specifically, the removal of the steel vaults was merely incidental to the demolition activity and, at that time, associated petroleum contamination was left in place pending the remediation of the Site. Second, the steel vaults contained petroleum, a chemical excluded from CERCLA's definition of hazardous substances, and for which removal costs are not recoverable. See 42 U.S.C.A. § 9601(14). Third, Plaintiffs argue that even if the Court concludes the vault removal constituted remedial action, it was an entirely separate phase of activity than that conducted in 2005, "limited to addressing a discrete issue, and was thus the equivalent of a different 'operable unit.'" Pl.'s Reply at 12 (citing U.S. v. Manzo, 2006 WL 2845763, at *7 (D.N.J. 2006) ("the statute of limitations does not bar compensation for operable units qualifying under the limitation even if the plaintiff is barred from seeking compensation from earlier operable units")). Fourth, Plaintiffs contend the fencing was installed to prevent dumping and allow safe pedestrian access—purposes which do not trigger initiation of remedial action. Pl.'s Reply at 13 (citing U.S. v. Atlantic Richfield, 147 F.

Supp. 2d 614, 620-21 (S.D. Tex 2001) (noting security fencing is included as a removal, not remedial action)). In sum, Plaintiffs argue:

> Honeywell's implicit position that any physical work on a site which was later remediated triggers the limitations period is contrary to the statue and relevant case law distinguishing between removal and remedial actions, and preliminary site activities constituting neither removal or remediation.

Pl.'s Reply at 11. Given all of the above, Plaintiffs have alleged sufficient facts to plausibly suggest the activities at the Site in 2000/2001 did not trigger the applicable limitations period.

### 3. 2005 Activities

The Parties appear to agree that, at a minimum, the activities at the Site in 2005 triggered the limitations period. As these activities occurred after September 23, 2004, AvalonBay's proposed CERCLA claims would be time barred unless they "relate back" to the filing of the original Complaint. Therefore, using the 2005 activities as the appropriate trigger, Defendant argues AvalonBay's claims are futile because they do not relate back.

#### a. *Relation Back*

Fed R. Civ. P. 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Although Rule 15(c)(1)(C) expressly addresses amendments changing a defendant, it "extends by analogy to amendments changing plaintiffs." Yanes v. Minute Maid Co., 2006 WL 1207992, at *3 (D.N.J. May 3, 2006); Nelson v. County of Allegheny, 60 F. 3d 1010, 1014 (3d Cir. 1995). In Yanes, U.S. District Judge Mary L. Cooper wrote:

> The "attitude" reflected in Rule 15 emphasizes that in order for an amended complaint to relate back to the original, the defendants must have (1) notice so that their defense is not prejudiced, and (2) knowledge that a claim could be brought against them by the new plaintiffs. The original complaint sufficiently notifies the defendant when (1) the new plaintiffs allege injury caused by the same conduct set out in the original complaint, or (2) there is an identity of interest between the original plaintiff and the new plaintiffs.

2006 WL 1207992, at * 3; see also Nelson, 60 F. 3d at 1014-15; Staren v. Amer. Nat'l Bank & Trust Co., 529 F.2d 1257, 1263 (7th Cir. 1976); Andujar v. Rogowski, 113 F.R.D. 151, 158-59 (S.D.N.Y.1986) (allowing addition of plaintiff to relate back to the original complaint when additional plaintiff was the real party in interest); Fashion Novelty Corp. of N. J. v. Cocker Mach. & Foundry Co., 331 F. Supp. 960, 965 (D.N.J. 1971) (identifying "virtual identity" between the new and original plaintiffs). Thus, the purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." Krupski v. Costa Crociere S. p. A., 130 S. Ct. 2485, 2494 (2010).

To be sure, the Third Circuit has noted Rule 15(c)'s "chief consideration of policy is that of the statute of limitations." Nelson, 60 F. 3d at 1014 n.7 (referencing Rule 15's Committee Notes). But, "[t]he substitution of . . . parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and

issues on which the action is based." Staren, 529 F.2d at 1263. "[W]here the defendant has had notice from the beginning that the plaintiff . . . is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist." Fashion Novelty, 331 F.Supp. at 964 (internal citations omitted).

Plaintiffs maintain that the claims of AvalonBay relate back because: (1) they relate to the same conduct in the original Complaint; (2) there is an identity of interest between the named plaintiff and the plaintiff to be named (Avalon II was the wholly owned subsidiary of AvalonBay); and (3) Defendant had knowledge that such claims could have been brought against it (because, for example, Defendant's document requests sought information related to any and all documents created and/or maintained by AvalonBay relating to environmental investigation, remediation, and/or construction activities at the Site). In addition, Plaintiffs note that Defendant makes no assertion that it would suffer any prejudice in the event AvalonBay were substituted for Avalon II.

Defendant argues Plaintiffs' mistake in failing to name AvalonBay should bar the amendment from relating back. This argument is not supported by the cases cited by Defendant. Both the Nelson and Agere courts held relation back was not available when there had been no mistake in identifying the named plaintiffs in the original complaint. Unlike a mistake, the putative plaintiffs in those cases had made an affirmative choice not to join the lawsuits in the outset. See Nelson, 60 F. 3d at 1014 (denying new class members the benefit of relation-back when Defendants did not know (or should not have known) that they could be sued directly by the putative plaintiffs *and* putative plaintiffs failed to demonstrate mistake in filing); Agere Sys. Inc. v. Advanced Envt'l Tech. Corp, Civ. A. 02-3830, dkt. no. 279-1, at *11-12 (E.D. Pa. Jan 11, 2008) (finding putative plaintiffs were "two steps removed" from original plaintiff, "not in the

same position, and are not real parties in interest"). In addition, unlike this case, the parties seeking to be added were entirely different parties, with interests independent from the other plaintiffs (and in the case of Nelson, with separate monetary claims). Here, Plaintiffs claim the failure to add AvalonBay was a mistake. Moreover, Plaintiffs maintain they are not trying to do an end run around the statute of limitations. Instead, they are merely substituting a corporate parent for its wholly owned subsidiary. Thus, the statute of limitations concerns are not similarly present.

The Court concludes that AvalonBay's claims do relate back to the filing of the original Complaint in September, 2010. As to whether the claims pled in that Complaint were timely asserted, the Court cannot, and need not, conclude as a matter of law that they were not. Rather, this determination should be made with respect to the claims of all of the named Plaintiffs on the basis of a more fully developed factual record. Accordingly, the Court does not accept the argument that the proposed amendment would be futile as time-barred.

**IV.   RESTITUTION CLAIMS**

Defendant claims the restitution claims asserted by AvalonBay in the proposed Amended Complaint are preempted by CERCLA. In support of this position, Defendant advances the same argument raised in its earlier Motion to Dismiss. In an Opinion dated August 17, 2011, Judge Sheridan denied Defendant's Motion to Dismiss with regard to the restitution claims because "Federal Rule of Civil Procedure 8(d)(2) permits alternative statements of a claim." See dkt. no. 32 at *11-12. Judge Sheridan declined to rule at that stage of the litigation that Plaintiffs could not prevail on a state common law restitution claim if they are unable to prevail on a CERCLA § 107 claim.

The case cited by Defendant, Bedford Affiliates v. Sills, held that "CERCLA preempts

the state law remedies of restitution and indemnification." 156 F.3d 416, 426 (2d Cir. 1998). However, as Plaintiffs point out, subsequent cases in the Second Circuit have limited Bedford's holding to claims for contribution under 42 U.S.C.A. § 9613 (a claim dismissed by Judge Sheridan). See N.Y. v. W. Side Corp., 790 F. Supp. 2d 13, 23 (E.D.N.Y. 2011). And Defendant itself acknowledges that other district courts in the Second Circuit have declined to dismiss restitution claims as being preempted by CERCLA because some damages recoverable under a restitution theory may not be recoverable under CERCLA. See Def.'s Opp. at 26 (citing N.Y. v. Hickey's Carting, Inc., 380 F. Supp. 2d 108, 118 (E.D.N.Y. 2005) (noting CERCLA's legislative history "demonstrates that Congress' concern was that recovery would be barred under restrictive state statutes of limitations, not that it would be allowed where it was forbidden under federal law."); Solvent Chem. Co. ICC Indus., Inc. v. E.I. Dupont De Nemours & Co., 242 F. Supp. 2d 196, 211 (W.D.N.Y. 2002) ("there may be additional areas not covered by CERCLA where a state law claim would not be duplicative").

Defendant also claims AvalonBay's restitution claim should be circumscribed in the event it is not preempted by CERCLA. Specifically, Defendant argues any restitution claim by AvalonBay should be limited to those funds expended by AvalonBay within the 6 years prior to the Amended Complaint's filing.

With respect to Defendant's preemption argument as it relates to the newly added plaintiff's restitution claim, Judge Sheridan addressed this issue and found that Rule 8 permits alternative statements of a claim. The Court sees no reason to find differently at this time. Accordingly, Honeywell's suggestion that Plaintiffs' proposed Amended Complaint should be denied as to this claim is rejected. For the purposes of this Motion, the Court need only determine whether the proposed claim is time-barred on its face. It is not. Whether, and to what

extent, AvalonBay's restitution claim ultimately survives will be determined together with the restitution claims of the other plaintiffs.

## V. AMENDMENTS TO SUPPLEMENT FACTUAL ALLEGATIONS

Plaintiffs seek to "provide amplification of the basis for asserting that Honeywell is the corporate successor of companies that Plaintiffs allege to have caused the contamination, and to reflect the current state of the remediation activities and the costs actually incurred to date." Pl.'s Br. at 6. This would be done based on discovery conducted to date. Defendant opposes this request on the bases that: (1) the allegations in the Complaint already satisfy the notice pleading standards under FED. R. CIV. P. 8(a); and (2) answering new factual allegations in the Amended Complaint will unnecessarily result in the expenditure of additional time and expense.

The Supreme Court has emphasized that the liberal spirit embodied in the language of Rule 15(a)(2) is to be followed by the courts. Foman v. Davis, 371 U.S. 178, 181-82 (1962). The Third Circuit, in turn, has interpreted Foman to mean "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006). Prejudice to the non-moving party is considered the touchstone in this analysis. Id.

Here, the balance of equities tips in favor of Defendant. Proposed amendments to pleadings that amplify or supplement factual allegations based on recent discovery serve little or no purpose. This is especially true in light of Defendant's concession that Plaintiffs' pleadings satisfy the general notice requirements of the Rules (both as to the factual allegations and damage claims). Therefore, the Court finds the proposed amendments with respect to Plaintiffs' factual allegations are unnecessary and will only add time, expense and potential confusion. Defendant would unfairly be forced to investigate the bases for the new allegations, evaluate

their validity, and respond. Notwithstanding the liberal standard for permitting amendments, Plaintiffs' request in this regard is DENIED.

## VI.     CONCLUSION AND ORDER

For the reasons described herein, as well as those set forth on the record following oral argument on October 22, 2012, Plaintiffs' Motion for Leave to file an Amended Complaint is **GRANTED**, in part, and **DENIED**, in part, as set forth above; and it is further

**ORDERED** that Plaintiffs' Amended Complaint shall be filed by January 21, 2013.

*s/ Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**

Dated: January 15, 2013